N7QDKAVC

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    -------------------------------x

3    KAVASUTRA 6TH STREET, INC., ET
     AL.,
4
                    Plaintiffs,
5
               v.                              23 CV 06359
6
     ADAMS, ET AL.,
7
                    Defendants.
8                                              Conference
     -------------------------------x
9                                              New York, N.Y.
                                               July 26, 2023
10                                             3:30 p.m.

11   Before:

12                   HON. VALERIE E. CAPRONI,

13                                             District Judge

14

15                        APPEARANCES

16   RIVKIN RADLER, LLP
          Attorney for Plaintiff
17   BY:  CHRISTOPHER MURRAY
          STEVEN SHAPIRO
18
     NEW YORK CITY LAW DEPARTMENT
19        Attorney for Defendants
     BY:  SAMANTHA SCHONFELD
20        GENAN ZILKHA

21

22

23

24

25

N7QDKAVC

```
1              (Case called; appearances noted)

2              THE COURT:  All right.  Please be seated.

3              So, Mr. Murray, this is your motion.

4              MR. MURRAY:  Yes.  The sale of kava as a single

5     ingredient food is not restricted or illegal in any way, shape,

6     or form.  It is a food.  Even if mixed with water, it's still a

7     food.  It's been served in the United States for over 100

8     years.

9              My clients have been in business serving it for almost

10    8 years, or just a little bit over 8 years.  There have not

11    been any instances that required anything with regard to its

12    service.  And there is -- in fact, when the City of New York,

13    through its health department, began to try to limit its sale,

14    it went to an administrative law judge, who made a

15    determination that it's not a food additive.  It's not

16    restricted under the FDAC.

17             THE COURT:  Look, I read that opinion.  The City

18    didn't show up, and he just found by default that he wasn't

19    going to make findings that it was an unlawful product.  The

20    notion that he found this is a food is not true.

21             MR. MURRAY:  Well, it's contained in the order, but

22    that's why we're here.  We're here for a determination as to

23    whether or not under the Food, Drug, and Cosmetic Act, whether

24    or not it can be restricted.  That's the relief we're seeking

25    in this Court.  We believe that under the relevant law, it
```

N7QDKAVC

1    can't be restricted as a single ingredient food.  It's not an

2    adulterant.  It's not a food additive.

3            THE COURT:  But it's sold as a supplement.  Kava is

4    sold as a supplement.  So what am I supposed to take from that?

5            MR. MURRAY:  In our client's business, it is sold for

6    direct consumption by the consumer, who usually puts it --

7    makes a tea out of it with water.  And there's nothing illegal

8    about it, and it's been done for 100 years here.

9            THE COURT:  You keep saying that, but you didn't

10   really answer the question of, this is a product that is sold

11   as a dietary supplement.

12           MR. MURRAY:  No, it's not.  It's -- not by our

13   clients.

14           THE COURT:  According to --

15           MR. MURRAY:  According to my client, it is not a

16   dietary supplement.  It is a food mixed with the water, like

17   going and buying a cup of coffee.  It's not sold as a dietary

18   supplement, it's not marked -- by our client, by the

19   plaintiffs.  I don't attest for anybody else, how they sell the

20   product, but by our client, it is sold as a direct, single

21   ingredient food to customers who drink it as a tea or in water.

22   And it's sold that way, which is what we're looking for relief

23   for.  Sold in that way, it can't be restricted, and there's no

24   New York State law, there's no New York City law that is being

25   enforced.  The only thing that they're relying on is the FDCA,

N7QDKAVC

1    and the FDCA does not restrict its sale, which is why we're in

2    Federal Court, because it's a determination of the meaning

3    under Federal Statute.  So we believe that there is no basis

4    for the health department to frustrate or prevent that type of

5    sale of that product in the specific way that it's being sold

6    by our clients.

7              Our clients have been in business for 8 years.  Our

8    clients are all of a sudden shut down and closed.  They risk

9    losing their entire business, because of the City's actions,

10   which are completely without basis in any law or regulation.

11   They just don't want them to sell this product in the way that

12   they're selling it.

13             THE COURT:  Why would they do that?  Why does the City

14   have a bee in their bonnet about this product?

15             MR. MURRAY:  I'm not sure about the answer to that.

16   It's sold in other jurisdictions, and I don't know the mindset

17   or the intent of the City as to why they're going after my

18   clients --

19             THE COURT:  Okay.

20             MR. MURRAY:  -- in this way.

21             THE COURT:  All right.  Thank you.

22             Let me hear from the City.

23             MS. SCHONFELD:  Yes, Judge.

24             So the FDA recognizes kava as a supplement.  In order

25   to be at -- in order for a supplement to be added to any other

1    ingredient, it must be on the list of generally recognized as

2    safe products.  The FDA has noted that it is not on the

3    "generally recognized as safe" list of products.  Therefore, it

4    can't be added to beverages, including just water, and if it

5    is, as in the case of plaintiffs, the food becomes adulterated,

6    which makes it of poorer quality.

7         THE COURT:  And it becomes "adulterated" because the

8    FDA defines this product as an additive?

9         MS. SCHONFELD:  An additive or supplement, yes.

10        THE COURT:  Or supplement.

11        MS. SCHONFELD:  And in order to be added to anything

12   else, it needs to be on a "generally recognized as safe" list,

13   which kava is not.

14        THE COURT:  So it can be sold standing by itself.

15        MS. SCHONFELD:  The GNC could sell it.

16        THE COURT:  It does.

17        MS. SCHONFELD:  And it does.  In a way, plaintiff is

18   selling it at a bar, unregulated, by distributing some powder

19   into water.  Pursuant to the FDA guidelines, it's not safe.

20        THE COURT:  That is because then -- so if you take the

21   capsule apart and dump it into a glass of water, that becomes

22   an additive?

23        MS. SCHONFELD:  An additive or supplement, yes?

24        THE COURT:  In order to sell an additive, it has to be

25   generally recognized as safe?

N7QDKAVC

1              MS. SCHONFELD:  Correct.

2              THE COURT:  Kava is not?

3              MS. SCHONFELD:  Correct.

4              THE COURT:  That is your argument?

5              MS. SCHONFELD:  That is our argument.

6              THE COURT:  So why all of a sudden has the City got

7    hot and bothered about kava?

8              MS. SCHONFELD:  A little bit of background on this

9    case.  There's two locations here, one on 6th Street -- or 1st

10   Street, and one on 10th Street.  We issued violations for the

11   10th Street location as far back as 2016.  So there have been

12   inspections, reinspections of the premises, especially the one

13   at 10th Street.

14             We even issued -- excuse me.  We even issued an

15   embargo order, where we went in, saw, you know, kava in certain

16   packaging or, you know, powder form, where we, you know, told

17   plaintiffs to keep the -- to basically embargo the products, to

18   basically keep them at the bar.  We labeled them, and they were

19   supposed to keep them for DOHMH to come back and discard?

20             THE COURT:  DOHM --

21             MS. SCHONFELD:  Sorry.  Department of Health and

22   Mental Hygiene, for them to come back and discard them on their

23   own.  So they violated that.  So there's been a series of

24   events here.  It's not all of a sudden in July the City was

25   like, we're going to ding everyone's violations who are using

N7QDKAVC

1   kava in this way.

2           And then in July -- like mid July, July 12, July 13,

3   the City inspected the premises, found kava being -- you know,

4   found packets or bags of kava, you know, not where they're

5   supposed to be used under -- like pursuant to the health code.

6   And the Health Department deemed them an adultered food, and

7   pursuant to Health Code Section 7105.  So the fact that they

8   were selling adulterated food in conjunction with obstruction

9   of the inspection and failure to comply by the embargo order,

10  we issued the closing order.

11          And I would just like to note that the City issued the

12  closing orders on or about July 12, and on July 13, went back

13  and reinspected or monitored on July 21st, and both locations

14  were open in violation of the closing order.

15          THE COURT:  Okay.

16          MR. MURRAY:  May I, your Honor?

17          THE COURT:  Well, anything further?

18          MS. SCHONFELD:  Nothing further right now, unless you

19  have any questions.

20          THE COURT:  Okay.

21          MR. MURRAY:  I'd like to address their claim by mixing

22  it with water it becomes an additive or a supplement.  That

23  specific --

24          THE COURT:  Well, it is a supplement, and the question

25  is whether -- it's on the FDA's list as an additive or

N7QDKAVC

1    supplement, so the issue is whether putting it in water or coke

2    or a pizza dough turns it into an additive.

3         MR. MURRAY:  And that issue was directly addressed by

4    the Seventh Circuit, where they held that if --

5         THE COURT:  Do you cite that case?

6         MR. MURRAY:  Yes, we did.  It's *U.S. v. Two Plastic*

7    *Drums*, and the citation is --

8         THE COURT:  I've got it.  I've got it.

9         MR. MURRAY:  And what they held is that if a single

10   ingredient is mixed with water, that doesn't make it an

11   additive.  And they specifically rejected the FDA's argument

12   that if you mix it with water, that creates an additive.  And

13   they actually called it an Alice in Wonderland interpretation

14   of the statute, that if the -- if a single ingredient food is

15   added to water, it does not make it a supplement, an additive,

16   a colorant, or anything else.  It's legal as a -- which they've

17   conceded, it's legal as a single ingredient.  The adding it to

18   water doesn't change it, because water doesn't have any of its

19   own characteristics.

20        And so, under the 7th Circuit determination, their

21   argument that by adding it to water, it becomes regulated, has

22   been flatly rejected.

23        THE COURT:  Seventh Circuit.  Are there any other

24   circuits who considered this issue?

25        MR. MURRAY:  Not that I've looked through.  Oh, yes.

N7QDKAVC

| | |
|---|---|
| 1 | There was a decision I think cited in the 7th Circuit decision. |
| 2 | THE COURT:  Do you want to say anything about -- the |
| 3 | City closed you on the 12th, and you were open on the 21st. |
| 4 | MR. MURRAY:  That's not what we're here for.  I don't |
| 5 | know those facts myself.  We're here for a determination of |
| 6 | whether adding kava to water makes it an additive basically. |
| 7 | THE COURT:  Well, you're here for a TRO. |
| 8 | MR. MURRAY:  That's correct.  And the TRO is not to |
| 9 | reopen them, is not to -- |
| 10 | THE COURT:  I thought it was to reopen them. |
| 11 | MR. MURRAY:  No.  The relief was very limited in the |
| 12 | TRO.  It was basically -- |
| 13 | THE COURT:  Well, you're asking me to order that |
| 14 | pending the hearing on the motion for preliminary injunction, |
| 15 | defendants are restrained from enjoining or restricting, |
| 16 | interfering, harassing, or otherwise preventing plaintiff's |
| 17 | sale of kava as a single ingredient food.  I read that to say |
| 18 | you want me to say, tell them, allow your clients to reopen. |
| 19 | MR. MURRAY:  If that's the effect of that.  If they're |
| 20 | doing other things that violate the Health Code, we're not |
| 21 | asking this Court to go in and monitor the health code with |
| 22 | relation to a restaurant. |
| 23 | THE COURT:  Do you want them to be able to reopen or |
| 24 | not? |
| 25 | MR. MURRAY:  Yes, I do. |

N7QDKAVC

1          THE COURT:  Isn't that what I just said, and you said

2     it wasn't what you were asking for?

3          MR. MURRAY:  We obviously wanted them to reopen, but

4     if it's limited to them selling kava as to a single ingredient

5     food, and that's a condition of their reopening, then --

6          THE COURT:  Well, what else can they do -- I'm sorry,

7     Mr. Murray.  You have got me thoroughly confused.

8          MR. MURRAY:  I'm sorry, your Honor.

9          There are other alleged violations by the City Health

10    Department.  Those need to be corrected by my client, but once

11    those are corrected, then if they're limited to selling single

12    ingredient kava, they should be able to reopen.  They --

13         THE COURT:  What are the other violations?

14         MR. MURRAY:  One of the violations I know was their

15    license had expired at one of the locations on June 30th, 2023.

16    They've now corrected that.

17         THE COURT:  Right.

18         MR. MURRAY:  They got the license renewed.  There are

19    allegations regarding obstructing of the inspections that have

20    been made.  I don't have personal knowledge of that, but that's

21    something that can be worked out with the Health Department as

22    to whether or not they're allowed to go back in and are

23    permitted or not obstructed from doing whatever investigations

24    or inspections.  So things like that, you can't come in and,

25    you know, monitor that.  I'll leave that to my client to deal

N7QDKAVC

```
 1    with the Health Department.  But the fundamental issue of them

 2    saying you can't sell kava as a single ingredient food, that's

 3    kind of all of the ball game.  If they're not allowed to do

 4    that, then they can't reopen under any circumstances, even if

 5    they did everything right.

 6              THE COURT:  Well, they could just sell other things.

 7              MR. MURRAY:  But they're a kava bar.  They don't have

 8    any other existence, so it's --

 9              THE COURT:  This is all they sell is tea?

10              MR. MURRAY:  Kava, yes.  I don't know if there's

11    condiments that they add with it, but that's what they do.

12    People go in; they buy kava; they sit outside; and they drink

13    it.

14              THE COURT:  No scones or coffee or --

15              MR. MURRAY:  Not that I am aware of, no.

16              THE COURT:  Okay.  Do you agree that this is like a

17    pure legal issue, that is to say, there are no facts that need

18    to be developed?

19              MR. MURRAY:  Solely as to whether kava as a single

20    ingredient may be sold, I think that's a legal issue.

21              THE COURT:  Okay.  Have a seat.

22              Do you agree that this is a pure legal issue?

23              MS. SCHONFELD:  Yes.

24              THE COURT:  There's no facts that you need to develop?

25              MS. SCHONFELD:  No.
```

N7QDKAVC

```
 1          THE COURT:  It's not that you say he's also, in
 2    addition to dumping kava powder into water and making tea, he's
 3    also taking the kava and dumping it into pizza dough and making
 4    kava pizza dough?
 5          MS. SCHONFELD:  Yes, some of our violations -- I think
 6    there was a pink lemonade one time.  They're not only serving
 7    kava in water.
 8          THE COURT:  But that's not material to your legal
 9    position, is it?
10          MS. SCHONFELD:  Right.  I don't think that's material
11    to Mr. Murray's legal position either, but it seems the TRO is
12    seeking the same relief as the underlying complaint is seeking.
13          THE COURT:  It is, and that's why I'm thinking, and
14    there are other things that the stores need to clear up, that
15    -- I'm not inclined to issue a TRO here.  What I'm inclined to
16    do is set an expedited briefing schedule, and just decide the
17    issue, because that seems to be a more efficient way of
18    proceeding.
19          MS. SCHONFELD:  Yes, Judge.
20          THE COURT:  So we've got their brief.  How long would
21    the City like to submit its response?
22          MS. SCHONFELD:  Could we have two weeks?  Is that too
23    long?  I know you said expedited.
24          THE COURT:  No.  I mean, I think that's reasonable.  I
25    would like good papers.
```

N7QDKAVC

1          So that would take us to -- today is the 26th.  That

2     would be August 9th.

3          How long would the plaintiffs like to reply?

4          MR. MURRAY:  One week is fine, your Honor.

5          THE COURT:  That takes us to August 7th.

6          Why don't we schedule oral argument for August 22.

7          MR. MURRAY:  Your Honor, I actually was going to be

8     out that day.

9          THE COURT:  Okay.  How about the 23rd?  The 22nd is

10    not good for me anyways, as it turns out.

11         MR. MURRAY:  Yes, that should be fine, your Honor.

12         THE COURT:  23rd.  Does that work?

13         MS. SCHONFELD:  Yes.

14         THE COURT:  All right.  Let's say -- Mr. Murray,

15    you're not looking up.

16         MR. MURRAY:  I'm trying to open up -- no, that's fine.

17         THE COURT:  The 23rd is fine?

18         MR. MURRAY:  Yes.

19         THE COURT:  2:30 on the 23rd for oral argument.

20         Okay.  Anything further from the plaintiff?

21         MR. MURRAY:  No, your Honor.

22         THE COURT:  Anything further from the City?

23         MS. SCHONFELD:  No, Judge.

24         THE COURT:  All right.  Thank you.

25         (Adjourned)