UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

KAVASUTRA 6th STREET, INC. and
KAVASUTRA 10th STREET, INC., Case No. 1:23-cv-06359

Plaintiffs,

-against-

ERIC ADAMS, as Mayor of the City of New York; CITY OF NEW YORK; ASHWIN VASAN, as Commissioner of the New York City Department of Health and Mental Hygiene; and NEW YORK CITY DEPARTMENT OF HEALTH AND MENTAL HYGIENE,

Defendants.

---------------------------------------------------------------X

**PLAINTIFFS' REVISED PROPOSED**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

RIVKIN RADLER LLP
Kenneth A. Novikoff
Elizabeth S. Sy
*Attorney for Plaintiffs*
926 RXR Plaza
Uniondale, New York 11556
Tel.: (516) 357-3000
RR File No.: 13661-1

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ ii

I. PROPOSED FINDINGS OF FACT ........ 1

A. The Health Department Issues Numerous Summonses to Plaintiffs for the Sale of Kava While Ignoring the Administrative Law Judge's Findings That Plaintiffs Were Selling Kava Mixed With Water as a Food and Not a Food Additive ........ 2

B. In January 2024, the Health Department Sought Guidance From the FDA and the FDA Informed the Health Department That Kava Steeped in Water is Considered a Food Rather Than a Food Additive ........ 5

C. The 2020 Memo ........ 7

D. Kava Steeped in Water Presents an Acceptably Low Level of Health Risk ........ 8

II. CONCLUSIONS OF LAW ........ 9

A. THIS COURT SHOULD ISSUE A DECLARATORY JUDGMENT THAT KAVA STEEPED IN WATER IS A CONVENTIONAL FOOD AND THUS PRESUMED SAFE ........ 9

B. Defendants Should Be Permanently Enjoined From Restricting, Interfering Or Preventing Plaintiffs' Sale Of Kava As A Single Ingredient Food Or Mixed With Water ........ 11

C. Plaintiffs' Fourteenth Amendment Rights Have Been Violated By Defendants ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Arista Recs. LLC v. Lime Group LLC*,
No. 06 CIV. 05936 (KMW), 2010 WL 10031251 (S.D.N.Y. Aug. 9, 2010) ..........................11

*Bronx Auto Mall, Inc. v. Am. Honda Motor Co*.,
934 F. Supp. 596 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 329 (2d Cir. 1997) .................................12

*Catanzaro v. Weiden*,
188 F.3d 56 (2d Cir. 1999)...........................................................................................................15

*Chase Grp. All. LLC v. City of New York Dep't of Fin*.,
620 F.3d 146 (2d Cir. 2010).........................................................................................................13

*Cleveland Bd. of Educ. v. Loudermill*,
470 U.S. 532 (1985).....................................................................................................................13

*Fuentes v. Shevin*,
407 U.S. 67 (1972).......................................................................................................................14

*Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc*.,
452 U.S. 264 (1981).....................................................................................................................15

*Mathews v. Eldridge*,
424 U.S. 319 (1976).....................................................................................................................13

*Memphis Light, Gas & Water Div. v. Craft*,
436 U.S. 1 (1978).........................................................................................................................14

*Ortiz v. Regan*,
769 F. Supp. 570 (S.D.N.Y. 1991) ..............................................................................................13

*Reuters Ltd. v. United Press Int'l, Inc*.,
903 F.2d 904 (2d Cir. 1990).........................................................................................................12

*Rex Med. L.P. v. Angiotech Pharms. (US), Inc*.,
754 F. Supp. 2d 616 (S.D.N.Y. 2010)..........................................................................................12

*Scheiner v. New York City Health and Hosp. Corp.*,
No. 98 Civ. 8330 (JGK), 1999 WL 771383 (S.D.N.Y. 1999), *aff'd*, 261 F.3d 127 (2d Cir. 2001).........................................................................................................13

*Semmes Motors, Inc. v. Ford Motor Co.*,
429 F.2d 1197 (2d Cir. 1970)....11

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
642 F. Supp. 2d 167 (S.D.N.Y.), *mod. on reconsideration*, 642 F. Supp. 2d 206 (S.D.N.Y. 2009)....12

*Stanley v. State of Illinois*,
405 U.S. 645 (1972)....14

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc.*,
60 F.3d 27 (2d Cir. 1995)....12

*United States v. 29 Cartons *** an Article of Food*,
987 F.2d 33 (1st Cir. 1993)....6, 10, 11

*United States. v. Two Plastic Drums*,
984 F.2d 814 (7th Cir. 1993)....6, 10, 11

*Weinstein v. Albright*,
No. 00 CV. 1193, 2000 WL 1154310 (S.D.N.Y. Aug. 14, 2000), *aff'd*, 261 F.3d 127 (2d Cir 2001)....13

*Wolff v. McDonnell*,
418 U.S. 539 (1974)....13

**Statutes and Other Authorities**

21 C.F.R. §189(c)....9

21 U.S.C. § 321....10

21 U.S.C. § 321(s)....10

21 U.S.C. § 348....9, 10

42 U.S.C. § 1983....14

New York City's Health Code § 71.05....2, 4

Vanuatu Kava Act of 2002....8

Plaintiffs Kavasutra 6th Street, Inc. ("Kavasutra 6th St.") and Kavasutra 10th Street, Inc. ("Kavasutra 10th St." and collectively with Kavasutra 6th St, "Plaintiffs") respectfully submit the following Revised Proposed Findings of Fact and Conclusions of Law.

## I. PROPOSED FINDINGS OF FACT

1. Kavasutra 6th St. and Kavasutra 10th St. operate cafés at 45 East First Street, New York, New York 10003 ("First Street Location") and 261 East 10th Street, New York, New York 10009 ("Tenth Street Location"), respectively. *See Plaintiffs' Trial Exhibit* ("*PTX*") *1-4*.

2. From their cafes, Plaintiffs serve a traditional beverage that consists of Kava mixed with water. *See Defendants' Trial Exhibit* ("*DTX*") *4, Harrison Tr., 13:9-11; PTX 7*.

3. This beverage is prepared the traditional way that dates back to approximately 2,000 to 3,000 years ago when humans discovered the south Polynesian islands. *Trial Transcript ("TT") at 69:12-23*.

4. Kava mixed with water is Plaintiffs' primary product. *See DTX 4; TT at 10:17-11:3*.

5. The water used to mix with Kava is merely a vehicle for "a means of ingestion," and the water is an inactive ingredient that does not change the Kava. *PTX 2*.

6. If Plaintiffs are prevented from selling Kava mixed with water, their entire business model would be destroyed. *See DTX 4 at 28:2-7* (explaining that the City has been nefarious in destroying Plaintiffs' business); *DTX 7, 8, 13, 14*.

7. Currently, there are no city laws that specifically address the sale of Kava, *TT at 142:19-21*, and the Health Department has not taken any enforcement action concerning the sale of Kava as a dietary supplement or a tea bag in New York City. *TT at 28:16-21; 29:23-30:2; 142:5-10.*

**A. The Health Department Issues Numerous Summonses to Plaintiffs for the Sale of Kava While Ignoring the Administrative Law Judge's Findings That Plaintiffs Were Selling Kava Mixed With Water as a Food and Not a Food Additive**

8. In around January 2023, the City of New York Department of Health and Mental Hygiene ("Health Department") decided that Kava mixed with water should not be sold and have since prevented the sale of it by Plaintiffs and closed Plaintiffs' cafes. *See PTX 1-4; DTX 7-8, 13-14*; *TT at 140:23-25* (Ms. Robinson confirming that Plaintiffs' stores are currently closed).

9. On November 16, 2022, the Health Department issued Summons No. 14372-22F0 to Kavasutra 6th St. for violation of Section 71.05 of New York City's Health Code ("NYCHC 71.05") on the grounds that "Food or beverage containing a prohibited substance" was being "possessed, proposed, presented, packed, offered or served" and was "not Generally Recognized As Safe (GRAS) for use in food or is not an approved food colorant or food additive in accordance with the U.S. Food and Drug Administration (FDA)." ("November 16, 2022 Summons"). *DTX 7*; *TT at 128:7-13*. That same day, the Health Department placed an embargo order on the First Street Location's Kava. *Id*.

10. The Health Department's Assistant Commissioner for the Bureau of Food Safety, Michelle Robinson, clarified that at the time this summons was issued, "the inspector was not clear on what the substance was," "they knew it was kava, but they wasn't sure about what should be done about it". *TT. at 133:20-134:6*.

11. On January 4, 2023, while the November 16, 2022 Summons was pending but before an OATH hearing had taken place, the Health Department issued Summons No. 0008823F0 to Kavasutra 10th St. for violation of NYCHC 71.05 ("January 4, 2023 Summons"). (ECF No. 8-

5)[1]. That same day, the Health Department placed an embargo order on the Tenth Street Location's Kava. *Id.*

12.  On January 11, 2023, without any pre-deprivation process, the Health Department issued a Cease and Desist Order to Kavasutra 10th St. ("January 11, 2023 C&D Order"). *DTX 14*; *TT at 134:7-25*.

13.  Pursuant to the January 11, 2023 C&D Order, Kavasutra 10th St. was directed to cease the sale of Kava and discard "all food or beverages not marked or labeled as a supplement". *DTX 14*.

14.  On March 2, 2023, an OATH hearing was held for the November 16, 2022 Summons and the Health Department failed to appear. PTX 1. The Administrative Law Judge ("ALJ") dismissed the NYCHC 71.05 violation on the grounds that "Kava is not being utilized as an additive or colorant" but was rather being sold as a food. Accordingly, Plaintiffs were legally permitted to serve Kava. *Id.*

15.  Despite the March 2, 2023 OATH Decision, on July 12, 2023, the Health Department issued Summons No. 0876623F0 to Kavasutra 10th St. for violation of NYCHC 71.05 ("July 12, 2023 Summons"). *DTX 8*. That same day, the Health Department issued a Closure Order for the Tenth Street Location without any pre-deprivation process, DTX 14, and placed an embargo order on Kavasutra 10th St.'s Kava. *DTX 8*.

16.  Similarly, despite the March 2, 2023 OATH Decision holding that Kavasutra 6th St. was selling Kava as a food rather than a food additive, on July 13, 2023, the Health Department issued Summons No. 1437222F1 ("July 13, 2023 Summons") and a Closure Order, without any

---

[1] Plaintiffs cite to the docket because *DTX 8* appears to be incomplete.

pre-deprivation process, to Kavasutra 6th St. on the same grounds as the July 12, 2023 Summons and Closure Order. *DTX 7*; *DTX 13*. The Health Department also placed an embargo order on Kavasutra 6th St.'s Kava. *DTX 7*.

17. On July 28, 2023, an OATH hearing was held for the July 13, 2023 Summons. Pursuant to a decision dated August 9, 2023, the ALJ dismissed the NYCHC 71.05 violation on the grounds that

> While [the Health Department] may have the authority to list certain 'adulterants' that may not be added to food, I find that Petitioner has not established that adding water to kratom or kava adulterates the water. There is no information provided as to how [the Health Department] determines that something is an 'adulterant'. Since kava [is] legal in NY and in most states, and since there are numerous establishments in NYC selling . . . kava, the guidelines provided for the use of . . . kava, and whether mixing it with water adulterates the water, must be stated with more specificity in to sustain a charge of NYC Health Code 71.05. In addition, kava [is not] being sold by Respondent as a 'dietary supplement' nor is it being unlawfully added to conventional foods. I find that Petitioner has not established a violation of NYC Health Code 71.05 by a preponderance of the evidence.

Accordingly, Plaintiffs were legally permitted to serve Kava. *PTX 2*.

18. Thereafter, on August 24, 2023, an OATH hearing was held for the July 12, 2023 Summons. Pursuant to a decision dated August 25, 2023, the ALJ dismissed the NYCHC 71.05 violation for the Health Department' failure to establish that Kava is an adulterant. *PTX 3*.

19. Despite the March 2, 2023, August 9, 2023 and August 25, 2023 OATH Decisions holding that Plaintiffs were not using Kava as a food additive, on September 19, 2023, the Health Department issued Summons No. 10985-23F0 to Kavasutra 10th St. ("September 19, 2023 Summons to Kavasutra 10th St.") for violation of NYCHC 71.05. *PTX 4*.

20. That same day, the Health Department issued Summons No. 1097623F0 to Kavasutra 6th St. for violation of NYCHC 71.05 ("September 19, 2023 Summons to Kavasutra 6th St."). *DTX 7*. That same day, the Health Department issued a Closure Order for the First Street Location without any pre-deprivation process, *DTX 13*, and placed an embargo order on Kavasutra 6th St.'s Kava. *DTX 7*.

21. On October 4, 2023, an OATH hearing was held for the September 19, 2023 Summons to Kavasutra 10th St. and the ALJ dismissed the NYCHC 71.05 violation. In doing so, the ALJ stated, "I do not credit the allegations. I do not find that the petitioner's email established that kava . . . was an unsafe substance that altered the water. I find petitioner failed to establish that kava . . . was not legal in NY and was not poisonous or injurious food and I find that kava . . . was not used as a dietary supplement[.]" *PTX 4*.

22. That same day, an OATH hearing was held for the September 19, 2023 Summons to Kavasutra 6th St. and the ALJ dismissed the NYCHC 71.05 violation. In doing so, the ALJ held that the Health Department did not establish that Kava was an unsafe substance that altered the water, illegal in New York, or a poisonous or injurious food. *DTX 11*.

### B. In January 2024, the Health Department Sought Guidance From the FDA and the FDA Informed the Health Department That Kava Steeped in Water is Considered a Food Rather Than a Food Additive

23. Corrine Schiff is the Health Department's Deputy Commissioner and has held this role since 2016. *TT at 7:5-9*.

24. Corrine Schiff is also an attorney. *TT at 34:6*.

25. On January 31, 2024, Ms. Schiff, on behalf of the Health Department, sent an email to Elizabeth O'Malley, a Branch Director of the Division of Retail Food of the FDA, introducing

its General Counsel, Lisa Lanau "who is working closely with us on multiple enforcement actions against food service establishments serving kava . . ." and seeking a "time to talk." PTX 5.

26. Ms. Schiff sought guidance from the FDA because the Health Department was facing challenges with entities selling kava and since the Health Department follows the FDA's direction, the FDA might have had something helpful to provide, including the FDA's current thinking on Kava. *See TT at 18:19-24; 46:1-8*.

27. Ms. Schiff was hoping Ms. O'Malley could either answer her questions or refer her to someone who could. *Id.* at 23:15-17.

28. On February 5, 2024, on behalf of the FDA, Ms. O'Malley explained to Ms. Schiff that "[i]f kava is steeped in water to brew tea it would not be considered a food additive . . ." *PTX 5*.

29. Ms. Schiff thanked Ms. O'Malley without any follow up questions or comments concerning any confusion on her part concerning the February 5, 2024 guidance received from Ms. O'Malley on behalf of the FDA. *Id.*

30. On March 11, 2024, on behalf of the FDA, Ms. O'Malley provided Schiff with "FDA's current thinking on Kava" and stated,

> I heard back from one of our Associate Chief Councils [sic]: Regarding case law supporting the view that kava when steeped only in water <u>IS a food</u> and <u>IS NOT a food additive</u> can be found in the following 2 cases: *United States. v. Two Plastic Drums*, 984 F.2d 814 (7th Cir. 1993) and *United States v. 29 Cartons *** an Article of Food*, 987 F.2d 33 (1st Cir. 1993).

*Id.* (emphasis in original).

31. The two cases cited in the March 11, 2024 FDA email, *Two Plastic Drums* and *29 Cartons*, support the conclusion that kava steeped with water is a conventional food and presumed safe, and not a food additive.

32. Ms. O'Malley also provided Schiff with a hyperlink to FDA's August 11, 2020 Memorandum titled "Review of the published literature pertaining to the safety of Kava for use in conventional foods" ("2020 Memo") noting that Kava is not approved for use in food as a food additive. *Id.*; *see also* DTX 1.

33. Notably, however, Ms. O'Malley clarified that unlike the use of Kava as a food additive in conventional foods (as set forth in the 2020 Memo), "kava steeped in water to brew tea would generally not be regulated as a food additive – if it is only steeped in water and consumed as a single-ingredient it is considered a conventional food." *Id.*

34. At the end of the email, Ms. O'Malley provided Schiff with a chart outlining the jurisdictions that permit the sale of kava steeped in water (Suffolk County, New York; Utah; City of Nashua; and North Dakota). *Id.*

35. Ms. Schiff did not send any follow up questions or comments concerning any confusion on her part concerning the March 11, 2024 guidance received from Ms. O'Malley on behalf of the FDA. *Id.*

36. In addition to the aforementioned jurisdictions, Hawaii's Department of Health affirmed the GRAS status of Kava based on common use in food prior to January 1, 1958. *PTX 6*; *TT at 80:21-81:4*.

**C. The 2020 Memo**

37. Michelle Robinson, the Health Department's Assistant Commissioner of the Bureau of Food Safety, primarily relied on the 2020 Memo in making the determination on behalf

of the Health Department that Kava steeped in water is a food additive. T*T at 124:5-22; 148:23-149:2*.

38. However, the 2020 Memo is silent as to whether Kava steeped in water is a food. *See* Defendants' Trial Exhibit ("DTX") 1; TT at 110:16-25 (the Court and Plaintiff's expert witness Dr. Craig Lewellyn agreeing that the 2020 Memo is silent as to whether Kava prepared as a tea-type beverage is a food).

39. The 2020 Memo does not conclude that Kava steeped in water is a food additive. *See DTX 1*; *TT at 155:6-156:2* (when asked to identify where in the 2020 Memo the FDA states or concludes that Kava steeped with water is a food additive, Ms. Robinson was unable to).

40. The FDA has not taken any action against kava steeped in water. *See TT at 115:12-23; 112:7-19*.

41. The FDA has never stated that Kava steeped in water is a food additive.

**D. Kava Steeped in Water Presents an Acceptably Low Level of Health Risk**

42. Kavasutra sources dried Kava root solids harvested from Noble kava and combines dried Kava root with water and isolates the liquid portion from the solids to produce its beverage. *PTX 7*.

43. Plaintiffs obtain raw material solely from a responsible source on the island of Vanuatu that is experienced in purchasing noble plant material directly from growers and processing it into powdered forms for export under the Vanuatu Kava Act of 2002 and with FDA certification. *Id.*

44. The choice of Kava raw material supplier, cultivar/variety, and plant part used to prepare water-based traditional beverages served by Kavasutra deliver preparations for customer consumption of acceptable safety based on the utilization of aqueous preparations from the correct

plant parts of recommended kava cultivars. This practical approach is recognized by academic Kava experts, the World Health Organization, and governments of kava-producing countries. *Id.*

45. The ingestion of the traditional beverage sold by Plaintiffs is relatively safe even in large quantities. *See TT at 70:15-19*; *71:7-13*; *96:11-12*; *PTX 7*.

46. Plaintiffs' customers have neither complained of nor experienced any adverse health effects as a result of their ingestion of kava mixed with water. *DTX 4*; *TT at 23:19-24:6*.

47. Defendants' fail to pinpoint any imminent health threat concerning the ingestion of Kava steeped in water. *See TT at 14:10-15* (Ms. Schiff did not recall any communication from the FDA stating Kava steeped in water equals an imminent health threat); *TT at 48:24-25* (Ms. Schiff admits, "I don't know that I'm aware of the specific harms that kava can cause.").

48. Kava is not included in the FDA's list of substances prohibited from use in human food as set forth in 21 CFR 189(c), which outlines food ingredients that have been prohibited by the FDA "because of a determination that they present a potential risk to the public health or have not been shown by adequate scientific data to be safe for use in human food." *See TT at 111:17-112:1*.

## II. <u>CONCLUSIONS OF LAW</u>

### A. THIS COURT SHOULD ISSUE A DECLARATORY JUDGMENT THAT KAVA STEEPED IN WATER IS A CONVENTIONAL FOOD AND THUS PRESUMED SAFE

49. Pursuant to NYCHC 71.05, a food can be "deemed adulterated" under any one of the 9 conditions identified in subsection (c). Some of these conditions rely on New York State law. *See, e.g.,* NYCHC 71.05(c)(9) (referencing the New York State Agriculture and Markets Law). Other conditions import federal standards. *See, e.g.,* NYCHC 71.05(c)(3) (referencing the FDCA.

50. The key provision in this case is NYCHC 71.05(c)(4), which deems a food adulterated when it contains a "food additive" that is "unsafe" within the meaning of the FDCA (21 U.S.C. § 348).

51. The FDCA defines "food" broadly as "articles used for food or drink for man or other animals" and "articles used for components of any such article." 21 U.S.C. § 321.

52. Substances classified as "food" are presumed safe under the FDCA. *Two Plastic Drums*, 984 F.2d at 816; *29 Cartons*, 987 F.2d at 35.

53. The FDA can prevent the sale of a "food" only if it proves by a preponderance of the evidence that the food is "injurious to health." *Id.*

54. Unlike "foods," which are presumed to be safe, any substance that meets the FDCA's definition of a "food additive" is presumed to be "unsafe" as a matter of law. *Id.*

55. The FDCA defines a "food additive" as "any substance the intended use of which results or may reasonably be expected to result, directly or indirectly, in its becoming a component or otherwise affecting the characteristics of any food… if such substance is not generally recognized, among experts qualified by scientific training and experience to evaluate its safety, as having been adequately shown through scientific procedures…to be safe under the conditions of its intended use[.]" 21 U.S.C. § 321(s).

56. If a substance is a food additive, the marketer has the burden of showing that the substance is GRAS. *Two Plastic Drums*, 984 F.2d at 816; *29 Cartons*, 987 F.2d at 35.

57. When distinguishing a "food" from a food additive, federal courts have held that when a food has "two or more active components…each component is a food additive." *Two Plastic Drums*, 984 F.2d at 818. "But when there is only one active component, as is the case here, that single component does not affect the characteristics of the food in question—rather, it

constitutes the food." *Id*. at 820 (observing that every single court to consider this issue arrived at the same conclusion).

58. The fact that Kava is mixed with water to assist in its consumption does not convert it from a food to a food additive.

59. In *Two Plastic Drums*, the Seventh Circuit used an example of a single ingredient food being mixed with water and said only an "Alice-in-Wonderland approach" would categorize the single ingredient food as an additive. *Two Plastic Drums*, 984 F.2d at 819.

60. Similarly, in *29 Cartons*, the First Circuit explained that "[t]he proposition that placing a single-ingredient food product into an inert capsule as a convenient method of ingestion converts that food into a food additive perverts the statutory text, undermines legislative intent, and defenestrates common sense. We cannot accept such anfractuous reasoning."

61. The FDA has specifically cited to and relied on *Two Plastic Drums* and *29 Cartons* in its determination that "kava when steeped only in water IS a food and IS NOT a food additive." PTX 5 (emphasis in original).

62. Accordingly, Kava mixed with water is considered a food as a matter of law.

### B. Defendants Should Be Permanently Enjoined From Restricting, Interfering Or Preventing Plaintiffs' Sale Of Kava As A Single Ingredient Food Or Mixed With Water

63. To obtain a permanent injunction, Plaintiffs must show (1) that they have suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that considering the balance of hardships between the plaintiffs and defendants, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *Arista Recs. LLC v. Lime Group LLC*, No. 06 CIV. 05936 (KMW), 2010 WL 10031251, at *3 (S.D.N.Y. Aug. 9, 2010).

64. Irreparable injury occurs when a plaintiff loses the ability to operate a business. *See Semmes Motors, Inc. v. Ford Motor Co*., 429 F.2d 1197, 1205 (2d Cir. 1970). For similar reasons, the loss of customer goodwill qualifies as irreparable injury. *See Reuters Ltd. v. United Press Int'l, Inc*., 903 F.2d 904, 908 (2d Cir. 1990).

65. In particular, irreparable harm is most evident when the absence of an injunction would eliminate a company's primary product. As the Second Circuit has explained

> Where the availability of a product is essential to the life of the business or increases business of the plaintiff beyond sales of that product—for example, by attracting customers who make purchases of other goods while buying the product in question—the damages caused by loss of the product will be far more difficult to quantify than where sales of one of many products is the sole loss. In such cases, injunctive relief is appropriate.

*Tom Doherty Assocs., Inc. v. Saban Ent., Inc*., 60 F.3d 27, 38 (2d Cir. 1995); *see also Bronx Auto Mall, Inc. v. Am. Honda Motor Co*., 934 F. Supp. 596, 613 (S.D.N.Y. 1996) (holding that plaintiff was entitled to a permanent injunction enjoining and restraining defendant from declining to renew or terminating the franchise of plaintiff for failure to make changes to the parts and service departments), *aff'd*, 113 F.3d 329 (2d Cir. 1997); *Rex Med. L.P. v. Angiotech Pharms. (US), Inc*., 754 F. Supp. 2d 616, 622 (S.D.N.Y. 2010) (holding that irreparable injury is demonstrated where the plaintiff's product would be off the market entirely).

66. Kava mixed with water is Plaintiffs' primary product, which is essential to their business. *See DTX 4*; *TT at 10:17-11:3*.

67. Defendants' actions have essentially destroyed Plaintiffs' entire business model. *DTX 4 at 28:2-7* (explaining that the City has been nefarious in destroying Plaintiffs' business); *DTX 7, 8, 13, 14*.

68. Without an injunction, Defendants will continue to harass Plaintiffs with baseless Summonses and Closure Orders that prevent Plaintiffs from selling their primary product, which is essential to Plaintiffs' survival as a business. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*, 642 F. Supp. 2d 167, 196 (S.D.N.Y.), *mod. on reconsideration*, 642 F. Supp. 2d 206 (S.D.N.Y. 2009) (holding there was ample evidence to suggest defendant would continue to engage in infringing activity absent an injunction, making any remedy at law inadequate).

69. Defendants have not identified any hardship they would suffer if they were enjoined.

70. There is no public harm because Kava steeped in water presents an acceptably low level of health risk.

71. Accordingly, Defendants should be permanently enjoined from restricting, interfering, or preventing Plaintiffs' sale of Kava mixed with water.

**C.   Plaintiffs' Fourteenth Amendment Rights Have Been Violated By Defendants**

72. "To state a due process claim, a plaintiff must allege that he has been deprived of life, liberty or property without due process of law." *Weinstein v. Albright*, No. 00 CV. 1193 (JGK), 2000 WL 1154310, at *5 (S.D.N.Y. Aug. 14, 2000), *aff'd*, 261 F.3d 127 (2d Cir 2001) (citing *Scheiner v. New York City Health and Hosp. Corp.*, No. 98 Civ. 8330 (JGK), 1999 WL 771383, at *6 [S.D.N.Y. 1999]), *aff'd*, 261 F.3d 127 [2d Cir. 2001]).

73. The Supreme Court has consistently "held that some form of hearing is required before an individual is finally deprived of a property interest." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citing *Wolff v. McDonnell*, 418 U.S. 539, 557-558 [1974]).

74. At a minimum, due process requires that a deprivation "be preceded by notice and opportunity for hearing appropriate to the nature of the case." *Chase Grp. All. LLC v. City of New*

*York Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 [1985]); *see also Ortiz v. Regan*, 769 F. Supp. 570, 571 (S.D.N.Y. 1991) ("Although defendants may deny Ortiz benefits to which she is not entitled, they may not suspend or reduce benefits she is already receiving without providing a constitutionally adequate pre-deprivation hearing."); *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 18 (1978) (holding that a hearing is required before cutting off utility service); *Fuentes v. Shevin*, 407 U.S. 67, 80–84 (1972) (hearing required before repossession of property).

75.

> If the right to notice and a hearing is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented. At a later hearing, an individual's possessions can be returned to him if they were unfairly or mistakenly taken in the first place, Damages may even be awarded to him for the wrongful deprivation. But no later hearing and no damage award can undo the fact that the arbitrary taking that was subject to the right of procedural due process has already occurred. "This Court has not ... embraced the general proposition that a wrong may be done if it can be undone."

*Fuentes*, 407 U.S. at 82 (citing *Stanley v. State of Illinois*, 405 U.S. 645, 647 [1972]).

76. Plaintiffs have a constitutionally protected interest in the operation of a food service establishment selling Kava mixed with water.

77. Plaintiffs' rights under 42 U.S.C. § 1983 were violated on numerous occasions when the Health Department issued Closure Orders without any pre-deprivation process.

78. Pursuant to NYCHC 81.39, the Health Department may order the cease of operations of a food service establishment only "if continued operation is an imminent hazard to public health."

79. None of Defendants' witnesses were able to pinpoint an imminent health threat. Instead, they confirmed that they were unaware of the specific harms that Kava can cause, *TT at 48:24-25*, and they have not taken any enforcement action in connection with the sale of Kava as a dietary supplement or a tea bag. *TT at 28:16-21; 29:23-30:2; 142:5-10*.

80. Kava "is a very safe beverage consumed traditionally even in very, very large amounts." *TT at 96:11-12*.

81. Defendants' decision to repeatedly issue summonses, embargo Plaintiffs' Kava products, and close their cafes despite multiple ALJ determinations that Plaintiffs were permitted to sell Kava was an abuse of discretion.

82. The discretion of an official "is not absolute" and "if a pattern of abuse and arbitrary action were discernable from review of an agency's administration of a summary procedure, the application of the procedure may be unconstitutional." *Catanzaro v. Weiden*, 188 F.3d 56, 62 (2d Cir. 1999) (internal quotations omitted) (citing *Hodel v. Virginia Surface Min. & Reclamation Ass'n, Inc.*, 452 U.S. 264, 303, n 46 (1981)).

83. Accordingly, there was no imminent emergency or public health hazard, like the COVID-19 pandemic, warranting the closure of Plaintiffs' cafes without pre-deprivation process.

Dated: Uniondale, New York
February 21, 2024

                                              Respectfully submitted,

                                              RIVKIN RADLER LLP

By:   */s/ Kenneth A. Novikoff*
       Kenneth A. Novikoff, Esq.
       Elizabeth S. Sy, Esq.
       926 RXR Plaza

Uniondale, New York 11556
Tel.: (516) 357-3000
Fax: (516) 357-3333
Ken.Novikoff@rivkin.com
Elizabeth.Sy@rivkin.com

4904-6499-3283, v. 5